UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN RANKIN,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 17-10469
Honorable Laurie J. Michelson
Magistrate Judge Patricia T. Morris

**OPINION AND ORDER
ACCEPTING MAGISTRATE JUDGE'S RECOMMENDATION [23],
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [15], AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [19]**

From the 1980s until 2012, John Rankin worked as a stacker in a steel mill. Rankin long had deformities to his toes that limited his ability to stand for long shifts. And in 2012, the pain drove him to stop working at the mill. His foot problems continued to worsen. Since 2014, Rankin has suffered from serious pain and trouble walking.

He applied for Social Security disability insurance and supplemental security income benefits, claiming the foot pain kept him from full-time employment since 2014. After the Commissioner of Social Security denied Rankin's applications, Rankin requested a hearing before an administrative law judge. In January 2016, the ALJ ruled that Rankin was not disabled as that term is defined in the Social Security Act. The Commissioner denied Rankin's request for further review, making the ALJ's disability determination the Commissioner's final decision.

Rankin then filed this suit, asking the Court to reverse the Commissioner's determination that he is not disabled. (R. 1, PID 3.) The Court referred the parties' motions for summary judgment

to Magistrate Judge Patricia T. Morris. She recommends that this Court affirm the decision that Rankin is not disabled under the Social Security Act. (R. 23.)

Rankin objects. He says the magistrate judge erred by concluding that (1) the ALJ properly applied the treating-physician rule and (2) the ALJ rightly found no objective medical evidence to support three of the treating physician's opinions. (R. 23, PID 537–42.)

The Court takes the objections in order. And having conducted a *de novo* review of each one, *see* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3), the Court will overrule them.

## I.

Rankin's first objection concerns the magistrate judge's conclusion that the ALJ properly applied the treating-physician rule. (R. 26, PID 537–38.) Rankin's treating physician opined on a medical-assessment form that, even if Rankin had to work a job falling within the sedentary-exertion classification, Rankin's foot problems necessitated several, unscheduled breaks during an eight-hour shift. (R. 11, PID 403.) The ALJ discounted the treating physician's opinion as to Rankin's ability to work at the sedentary level, as that conclusion is one reserved to the Commissioner's discretion (R. 11, PID 48). 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1–2 (July 2, 1996).[1]

In reviewing the ALJ's decision, the magistrate judge noted that, as a rule, an ALJ ought to give controlling weight to the treating physician's opinion. (R. 23, PID 521–22.) *See* 20 C.F.R. §§ 404.1527(c) (2), 416.927(c)(2). And the magistrate judge agreed that the Commissioner need not give controlling weight to a physician on an issue reserved to the Commissioner's discretion (R. 23, PID 521–22). *See* 20 C.F.R. § 404.1527(d). Because the magistrate judge—like the ALJ—

---

[1] Though SSR 96-2p has been rescinded, *see* 82 Fed. Reg. 15263 (Soc. Sec. Admin March 27, 2017), it was the regulation in place when the ALJ decided Rankin's claim.

believed the treating physician's opinion went to whether Rankin could work at the sedentary level, the magistrate judge agreed that the ALJ properly discounted it.

Resisting that conclusion, Rankin says the magistrate judge improperly broadened the Commissioner's discretion.[2] (R. 26, PID 537.) Rankin argues only that "the ALJ and MJ's opinions are inconsistent with the uncontradicted medical evidence of record requiring reversal." (R. 26, PID 539.)

Yet taking a fresh look at the record, the ALJ only discounted the treating physician's opinion to the extent the physician opined that Rankin could not work at the sedentary level. (R. 11, PID 48.) When a doctor offers an opinion on a claimant's ability to work at the sedentary level, the ALJ is right to consider that opinion an intrusion into the Commissioner's discretion. *See* SSR 96-5P, 1996 WL 374183 at *5 (July 2, 1996) ("The judgment regarding the extent to which an individual is able to perform exertional ranges of work goes beyond medical judgment regarding what an individual can still do and is a finding that may be dispositive of the issue of disability.")[3] Accordingly, the ALJ need not give controlling weight to the opinion that Rankin could not work a sedentary job. *Id.*

In other words, the ALJ rightly decided to discount the treating physician's opinion because he properly considered a portion of the opinion an encroachment on the Commissioner's discretion. *See* SSR 96-2P, 1996 WL 374188 at *2. And the ALJ provided a "sufficiently specific" explanation of his decision. *See* S.S.R. 96-2p, 1996 WL 374188, at *4–5. Thus, the magistrate judge did not err in affirming the ALJ's decision. Rankin's first objection is overruled.

---

[2] Rankin downplays the fact that the magistrate judge also affirmed the ALJ's decision because the treating physician's opinion was not supported by objective medical evidence. (R. 23, PID 522–23.)

[3] Though SSR 96-5p has been rescinded, *see* 82 Fed. Reg. 15263 (Soc. Sec. Admin March 27, 2017), it was the regulation in place when the ALJ decided Rankin's claim.

3

## II.

The remainder of Rankin's objections take issue with the fact that the Report affirms three decisions by the ALJ. First, Rankin objects that the ALJ decided to discount two opinions the treating physician wrote on the medical-assessment form: (1) Rankin needed unscheduled breaks and (2) would miss fourteen days per month due to his foot problems. (R. 11, PID 48.) In each instance, Rankin argues only that "objective medical evidence in the record fully supports" these opinions. (R. 26, PID 540.) Rankin then objects that the ALJ's residual-functional-capacity assessment fails to account for Rankin's need to elevate his feet. (*Id.* at 544.)

Starting with the ALJ's discounted weighting of the treating physician's opinions, Rankin's objections are unavailing. "An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)). And if the ALJ finds that a treating physician's opinion is not entitled to controlling weight, an ALJ must give "good reasons" for whatever weight it assigns to a treater's opinion. *Wilson*, 378 F.3d at 544; *see also* S.S.R. 96-2p, 1996 WL 374188 at *5 (providing that a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record").

As to the treater's opinion that Rankin needed unscheduled breaks, the medical-assessment form acknowledged that Rankin's foot problems did not affect sitting. (R. 11, PID 401). Turning to the treater's records, the detailed, longitudinal data offer nothing to suggest Rankin needed unscheduled breaks. The medical records do note Rankin's chronic foot pain, especially before and immediately after multiple surgeries. (*See* R. 11, PID 314–21, 326–29, 336, 344–47, 350–52,

4

375–77.) Yet the records chart Rankin's improvement as he recovered (*see, e.g.*, R. 11, PID 381–83, 389–91, 400), even to the point where he could push off on his big toe (*id.* at 382), complete therapy exercises at home (*id.* at 396–97), and no longer needed compression socks (*compare id.* at 362 *with id.* at 374). By the time of his hearing, Rankin could comfortably wear his diabetic shoes. (R. 11, PID 71.) So Rankin has not shown that the opinion about breaks is consistent with the other substantial evidence such that it would have been entitled to controlling weight. In any event, the ALJ accommodated Rankin's need to take breaks by providing a "sit/stand" option in the residual functional capacity determination. (R. 11, PID 48.)

The medical records also undercut the treater's opinion that Rankin might miss fourteen days of work per month. As Rankin recovered from surgery on his right foot, the treater's records document Rankin's decreasing pain. (*Compare* R. 11, PID 360 (January 8, 2015 right foot pain at a "10") *with* R. 11, PID 389 (May 7, 2015 no pain); R. 11, PID 398 (July 9, 2015 "right foot is feeling better").) The records document Rankin's improvement and persistence with physical therapy. And even though Rankin started to experience pain in the left foot, (*see* R. 11, PID 399), the medical records do not disclose whether Rankin ever had surgery on it (*id.* at 400). So again, given the inconsistencies between the opinion and the substantial evidence in the record, the ALJ was not required to give controlling weight to the opinion that Rankin would miss two weeks of work per month.

Finally, to the extent Rankin thinks the residual-functional-capacity assessment should have accounted for Rankin's need to elevate his feet, it is the ALJ's task to "evaluat[e] the medical evidence and the claimant's testimony to form an 'assessment of [Rankin's] residual functional capacity." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (quoting 20 C.F.R. § 416.920(a)(4)(iv)). And the ALJ did just that, *see* 20 C.F.R. § 416.945(a), even acknowledging

5

that, at one point, the treater urged Rankin to elevate his feet (R. 11, PID 47). Yet substantial evidence is inconsistent with Rankin's contention that the residual-functional-capacity determination should have accounted for Rankin's need to elevate his feet for multiple hours per day. To be sure, at his hearing Rankin said he elevated his feet for about one to two hours per day. (R. 11, PID 77–78.) But Rankin's treatment history never says so. Though his treating physician recommended elevating the feet for a period of time after surgery on the right foot, (*see* R. 11, PID 374 (March 12, 2015 visit)), as Rankin recovered, the treating physician no longer included that direction (R. 11, PID 397 (June 11, 2015)). So the ALJ did not err in assessing Rankin's residual functional capacity.

For these reasons, Rankin's final three objections are overruled.

### III.

The Court has conducted *de novo* review of the issues raised in Rankin's objections. This Court has no obligation to review the magistrate judge's other findings. *See Thomas v. Arn*, 474 U.S. 140, 144 (1985); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981); *Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012). The Court accepts Magistrate Judge Morris' recommendation (R. 23), GRANTS the Commissioner's motion for summary judgment (R. 19), and DENIES Rankin's (R. 15).

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
U.S. DISTRICT JUDGE

Dated: March 30, 2018

**CERTIFICATE OF SERVICE**

       The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 30, 2018.

                                                s/Keisha Jackson
                                                Case Manager